Petition of Frederick W. SMIGELSKI.
Civ. No. 627-60.

United States District Court
D. New Jersey.
July 14, 1960.

Frederick W. Smigelski, pro se.

WILLIAM F. SMITH, Chief Judge.

This matter is before the Court on an application for the assignment of counsel. The applicant is in custody in a State institution of the reformatory type pursuant to the judgment and commitment of a State Court. He alleges that he is deprived of his liberty in violation of his constitutional rights guaranteed by the Fourteenth Amendment. The application alleges in sufficient detail the facts concerning the applicant's commitment and detention, and we therefore treat it as an application for a writ of habeas corpus under sections 2241 and 2254 of Title 28 U.S.C.A. This course is adopted because it is the opinion of the Court that counsel should not be assigned unless it appears that the applicant may have a meritorious cause.

It appears from the application, supplemented by the reported decisions to which reference is hereinafter made, that the Grand Jury of Hudson County returned an indictment which charged the applicant with murder. The applicant was fourteen years of age at the time the offense was committed, September 12, 1947. The applicant was arraigned in the Hudson County Court of Oyer and Terminer on October 14, 1947, and there, represented by competent counsel, moved to quash the indictment on the ground that the Court was without jurisdiction.

It was there urged that the applicant was a juvenile delinquent within the meaning of the Juvenile and Domestic Relations Court Law, and particularly R.S. 9:18–12, as amended by the Laws of 1946, N.J.S.A. 9:18–12, now N.J.S.A. 2A:4–14, and therefore subject to the exclusive jurisdiction of the Juvenile and Domestic Relations Court. The motion was denied and the denial thereof was upheld on appeal. State v. Smigelski, 137 N.J.L. 149, 58 A.2d 780; State v. Smigelski, 1 N.J. 31, 61 A.2d 583. See Ex parte Mei, 122 N.J.Eq. 125, 192 A. 80, 110 A.L.R. 1080. Thereafter, the applicant entered a plea of non vult (R.S. 2:138–3, now N.J.S.A. 2A:113–3), and was thereupon sentenced to a term of imprisonment of 25 to 30 years.

The decision of the old Court of Errors and Appeals of New Jersey in the case of Ex parte Mei, supra, was expressly overruled by the decision of the new Supreme Court of New Jersey in the case of State v. Monahan, 15 N.J. 34, 104 A.2d 21, 48 A.L.R.2d 641, decided on March 22, 1954. It was therein held that under the provisions of the Juvenile and Domestic Relations Court Law, supra, the misconduct of a child under sixteen years of age, including misconduct defined by statute as criminal, shall be treated as "juvenile delinquency" as therein defined, and that exclusive jurisdiction of the offender is in the Juvenile and Domestic Relations Court. We are in accord with this construction of the statute.

Thereafter the applicant, represented by counsel who had represented him pre-

viously, petitioned the Assignment Judge to vacate the original sentence and to set aside the plea of non vult previously entered. Rule 3:7–15 of the Rules of Criminal Practice. The relief was granted on June 29, 1954, and the cause was subsequently transferred to the Juvenile and Domestic Relations Court with a specific direction that "the petitioner be proceeded against forthwith * * * in accordance with the statute in such cases made and provided, * * *." A formal complaint charging the applicant with juvenile delinquency was filed in the said court on August 25, 1954, when a hearing was held. It should be noted that at that time the applicant was approximately twenty-one years of age. A motion to dismiss the complaint was made on the ground that the applicant, now more than eighteen years of age, was no longer subject to the jurisdiction of the Juvenile and Domestic Relations Court. The motion was denied and the applicant thereupon entered a plea of guilty to the charge of juvenile delinquency. The general allegation that there was a denial of due process is not supported by the record.

The applicant was committed on September 30, 1954, to the Bordentown Reformatory "for an indefinite term," and has since been confined there. The commitment was approved as valid under N.J.S.A. 2A:4–37 as it existed prior to its amendment of 1957. In re Smigelski, infra, 154 A.2d at pages 6 and 7. A writ of habeas corpus issued in 1956 on a petition which challenged as arbitrary and an abuse of discretion the refusal of the Board of Managers of the institution to discharge the applicant on parole. The writ was discharged on the ground that the appropriate remedy was under Rule 4:88–8 of the Rules of Civil Practice. There was no appeal taken from this decision. Another writ of habeas corpus was granted in 1958 on a petition which again challenged, on the grounds previously urged, the jurisdiction of the Juvenile and Domestic Court. This writ of habeas corpus was discharged after a full hearing. The applicant was represented by counsel assigned by the Court in both later proceedings.

An appeal to the Superior Court, Appellate Division, followed, and thereafter, pursuant to Rule 1:10–1, the Supreme Court of New Jersey entertained jurisdiction of the appeal on its own motion for certification. In re Smigelski, 30 N.J. 513, 154 A.2d 1. The jurisdictional question raised in the earlier proceedings was carefully considered, and after such consideration it was held that the age of the applicant at the time the offense was committed was determinative of the jurisdiction of the Juvenile and Domestic Relations Court. This decision followed the earlier decision of the Supreme Court of New Jersey in the case of Johnson v. State, 18 N.J. 422, 114 A.2d 1, in which it was also held that the statutory criterion of the said Court's jurisdiction is the age of the offender at the time of the offense. We are in accord with this construction of the statutory provisions.

■■ The present application again challenges the jurisdiction of the Juvenile and Domestic Relations Court on the grounds previously urged and considered by the Supreme Court of New Jersey. The question raised is primarily one of statutory construction. The ultimate authority on the construction placed upon the pertinent provisions of the Juvenile and Domestic Relations Court Law, supra, is the highest court of this State. Hanover Fire Ins. Co. v. Harding, 272 U.S. 494, 509, 47 S.Ct. 179, 71 L.Ed. 372; Hartford Accident & Indemnity Co. v. N. O. Nelson Mfg. Co., 291 U.S. 352, 358, 54 S.Ct. 392, 78 L.Ed. 840; State of Minnesota ex rel. Pearson v. Probate Court, 309 U.S. 270, 273, 60 S.Ct. 523, 84 L.Ed. 744. The jurisdiction of this Court is limited to a determination of the federal question; we may determine whether or not the pertinent provisions of the Act, as construed by the highest court of the State, violate the due process clause of the Fourteenth Amendment. Ibid. We are of the opinion that they do not. We are aware of the opinion of Judge Forman, formerly of this court,

in the case of Application of Johnson, D.C., 178 F.Supp. 155, but for reasons we need not discuss we are not fully in accord with his views.

The applicant again challenges as arbitrary the refusal of the Board of Managers of the institution to release him on parole. The allegations advanced in support of the challenge would seem to suggest that, in the opinion of the applicant, his rehabilitation is sufficient to warrant his release on parole; the opinion is clearly subjective. It is rather obvious that a correctional system devised for the rehabilitation of the youthful offender would become a travesty if the personal opinion of the inmate of an institution were made a determinative factor.

█ █ The authority to grant release on parole is defined by statute. There is vested in the "several boards of managers of state correctional institutions, except the state prison," the discretionary "power to release upon parole such inmates of their respective institutions * * * as they may determine to be eligible therefor," N.J.S.A. 30:4–106, subject however, to other statutory limitations. The grant of parole is a matter of legislative grace and the ultimate decision as to its grant or denial is entrusted to the paroling authority. White v. Parole Board, 17 N.J.Super. 580, 86 A.2d 422; State ex rel. Kincaid v. State Parole Board, 53 N.J.Super. 526, 147 A.2d 817. A writ of habeas corpus is not available to secure relief from its decisions. See Hauck v. Hiatt, 3 Cir., 141 F.2d 812 and the cases therein cited. The applicant may not demand, as a matter of right, that he be discharged on parole.

The observation of Mr. Justice Hall in the case of In re Smigelski, 30 N.J. 513, 527, et seq., 154 A.2d 1, 8, et seq., is pertinent here: It is therein stated "The responsibility of the board of managers in this type of case is a heavy one, both to society and to the prisoner. Since confinement here has already extended over about 12 years, during the greater part of which we presume there has been exposure to rehabilitative treatment, his status should be the subject of careful attention and periodic review at reasonably short intervals. As was said in State v. Wingler, 25 N.J. 161, 181, 135 A.2d 468, 479 (1957), 'arbitrary or capricious action is impermissible and upon a sufficient showing of such conduct judicial relief will justly be afforded.'" We can safely presume that the Board of Managers in the proper discharge of its function, and following the admonition of the Supreme Court of New Jersey, will review the case of the applicant from time to time as occasion requires.

█ █ It appears to be the further contention of the applicant that the vacation of his original sentence, imposed in 1949, and his subsequent commitment "for an indefinite term" violated the prohibition against double jeopardy. The contention is clearly without merit. The original sentence was held to be invalid; this decision did not entitle the applicant to release. However, it is not necessary for this Court to even consider the contention; the prohibition against double jeopardy embodied in the Fifth Amendment is not one of the fundamental protections guaranteed by the due process clause of the Fourteenth Amendment. Palko v. State of Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288.

█ The applicant further alleges that he was not permitted to communicate with the representatives of two publications and was thus denied the opportunity to place the facts of his case before the public. We assume that the rules necessary in the orderly conduct of the institution prohibited such communication. Such a rule would not violate any constitutional right of the applicant. The usual concomitance of lawful incarceration is the withdrawal or limitation of many privileges; these limitations are justified by the considerations underlying the orderly administration of the penal system. Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356. The inmate of a correctional institution has no right to unrestricted freedom in the receipt and transmission of mail and the courts will not inter-

fere with rules defining appropriate restriction. Ortega v. Ragen, 7 Cir., 216 F.2d 561, certiorari denied 349 U.S. 940, 75 S.Ct. 786, 99 L.Ed. 1268; Adams v. Ellis, 5 Cir., 197 F.2d 483; United States ex rel. Vraniak v. Randolph, D.C., 161 F.Supp. 553; Reilly v. Hiatt, D.C., 63 F.Supp. 477; United States ex rel. Mitchell v. Thompson, D.C., 56 F.Supp. 683. However, the legality of the restriction is not a matter for consideration upon petition for writ of habeas corpus. Ibid.

It is the opinion of the Court for the reasons hereinabove discussed that the application, considered in the light most favorable to the applicant, presents no federal question cognizable under a petition for writ of habeas corpus.

It Is Ordered on this 14th day of July, 1960, that the application for the assignment of counsel and the said application treated as a petition for writ of habeas corpus be, and it hereby is, denied; and,

It Is Further Ordered that the said application be filed without prepayment of costs.